UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MELANIE M. COLON,

                              Plaintiff,

                                                                    **MEMORANDUM & ORDER**

            - against -                                             19-CV-1458 (PKC)

ANDREW SAUL, Commissioner of Social
Security,[1]

                              Defendant.
----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Melanie M. Colon brings this action under 42 U.S.C. § 405(g), seeking judicial

review of the decision made by the Commissioner of the Social Security Administration ("SSA")

denying her claim for Social Security Disability Insurance Benefits ("DIB"). Before the Court are

the parties' cross-motions for judgment on the pleadings. Plaintiff seeks an order reversing the

Commissioner's decision and remanding for the calculation of benefits, or, alternatively, remand

of this matter to a different ALJ. The Commissioner asks the Court to affirm the denial of

Plaintiff's claim. For the reasons that follow, the Court grants Plaintiff's motion for judgment on

the pleadings, denies the Commissioner's cross-motion, and remands this matter for further

administrative proceedings.[2]

_____

    [1] Andrew Saul became Commissioner of the Social Security Administration on June 17,
2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as Defendant
in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a
party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is
pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C.
§ 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding
any change in the person occupying the office of Commissioner of Social Security or any vacancy
in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

    [2] While Plaintiff requests that this matter be remanded for a new hearing before a different
ALJ (*see* Memorandum of Law in Support of Plaintiff's Motion ("Pl.'s Mem."), Dkt. 10-1, at 25),

1

# BACKGROUND

## I.    Procedural History

On July 24, 2015, Plaintiff filed an application for DIB, alleging disability beginning on May 23, 2014. (Administrative Transcript ("Tr."),[3] Dkts. 7, 7-1,[4] at 15.) On November 20, 2015, Plaintiff's application was initially denied. (*Id.* at 15, 2381–92.) Plaintiff then filed a request for a hearing before an administrative law judge ("ALJ"). (*Id.* at 2398–99.) On September 29, 2017, Plaintiff appeared with counsel before ALJ Thomas Gray. (*Id.* at 31–58.) In a decision dated November 28, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act (the "Act") and was not eligible for the benefits for which she had applied. (*Id.* at 12–30.) On January 14, 2019, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the decision. (*Id.* at 1–6.) Thereafter, Plaintiff timely[5] commenced this action.

---

the Court does not find that the ALJ's conduct "gives rise to serious concerns about the fundamental fairness of the disability review process" (*id.* quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004))), and thus declines to order the requested reassignment.

[3] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript (appearing in the lower right corner of each page) and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

[4] The Administrative Transcript is divided across two dockets. (*See* Dkt. 7 (pages 1–1462), Dkt. 7-1 (pages 1463–2930).)

[5] According to Title 42, United States Code, Section 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42. U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to

## II.    The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry.  The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is yes, the claimant is not disabled.  If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a severe impairment.  *Id.* § 404.1520(a)(4)(ii).  An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).[6]  If the impairment is not severe, then the claimant is not disabled.  Here, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity; bipolar disorder; panic disorder; [and] asthma (20 CFR 404.1520(c))."  (Tr., at 17 (internal record citations omitted).)  The ALJ then progressed to the third step and determined that Plaintiff's severe impairments did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

---

the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on January 19, 2019, and that the instant action, filed on March 13, 2019—53 days later—is therefore timely. (*See generally* Complaint, Dkt. 1.)

[6] Here, the ALJ also followed the "special technique" for evaluating claimed mental impairments, pursuant to 20 C.F.R. § 404.1520a. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *17 (E.D.N.Y. Sept. 28, 2017) (citation omitted).

404.1520(d), 404.1525 and 404.1526)"—the Listings.   (*Id.*)  Moving to the fourth step, the ALJ

found that Plaintiff maintained the residual functional capacity ("RFC")[7] to perform

> medium work[8] as defined in 20 CFR 404.1567(c), that does not expose her to smoke, dust, or any other respiratory irritants.  The claimant is able to understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can use her judgment to make simple, work-related decisions and she can occasionally interact with supervisors, co-workers, and the general public.

(*Id.* at 20.) Based upon this RFC finding, the ALJ determined that Plaintiff was unable to perform

any of her past relevant work as a hair braider.  (*Id.* at 24.)  However, "[c]onsidering [Plaintiff's]

age, education, work experience, and [RFC]," the ALJ concluded that other jobs exist in significant

numbers in the national economy that Plaintiff could also perform, including the representative

occupations of "hand packager, janitor, and dishwasher."   (*Id.* at 25.)  The ALJ accordingly

concluded that Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal

district court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C.

§ 405(g).  In reviewing a final decision of the Commissioner, the Court's role is "limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151 (internal quotation

---

[7] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

[8] According to the applicable regulations,

[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation and alterations omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76, 178 n.3 (2d Cir. 2013) (noting that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the court] to glean the rationale of an ALJ's decision" (internal quotation omitted)). Ultimately, the reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

## DISCUSSION

Plaintiff argues that (1) her bipolar and panic disorders meet or equal the severity of Listings 12.04 and 12.06, respectively (Pl.'s Mem., Dkt. 10-1, at 16–18); (2) the ALJ did not properly evaluate the medical evidence and failed to adhere to the treating physician rule (*id.* at 19–24); and (3) the ALJ improperly evaluated Plaintiff's credibility (*id.* at 24–25). The Court finds that remand is warranted on all three grounds.

## I.     Step-Three Severity Finding

Each Listing sets out "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). A plaintiff seeking to establish that

her impairments meet or equal the severity of an impairment in the Listings must establish that she "satisfies all of the criteria of that listing, including any relevant criteria in the introduction." *Id.* § 404.1525(c)(3); *accord Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("[A]n impairment that manifests only some of those criteria, no matter how severely, does not qualify."). An ALJ is not necessarily required to set out why a plaintiff has not met the requirements of a Listing so long as "other portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *McIntosh v. Berryhill*, No. 17-CV-5403 (ER) (DF), 2018 WL 4376417, at *22 (S.D.N.Y. July 16, 2018) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)). A plaintiff bears the burden to "demonstrate that [her] disability [meets] all of the specified medical criteria of a [] disorder." *Id.* at *18 (second alteration in original) (quoting *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007) (summary order)).

## A. Listings 12.04 and 12.06

Listing 12.04 applies to depressive, bipolar, and related disorders. As relevant to bipolar disorders, Listing 12.04 requires medical documentation of a plaintiff's bipolar disorder, characterized by three or more of the following: pressured speech; flight of ideas; inflated self-esteem; decreased need for sleep; distractibility; involvement in activities that have a high probability of painful consequences that are not recognized; or an increase in goal-directed activity or psychomotor agitation. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, sec. 12.04, 12.04(A)(2) (internal cross-references omitted). Listing 12.04 also requires a showing of one of two categories. As one option, a plaintiff can demonstrate the "paragraph B criteria"—"[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at 12.04(B) (internal cross-references

6

omitted).  (*See also* Tr., at 18.)  Alternatively,  a plaintiff  can demonstrate  that  her "mental  disorder

in this listing  category  is 'serious  and persistent;'  that is, [she has] a medically  documented  history

of the existence  of the disorder  over a period  of at least 2 years"  with

> evidence  of both: (1) medical  treatment,  mental  health  therapy,  psychosocial
> support(s),  or a highly  structured  setting(s)  that is ongoing  and that diminishes  the
> symptoms  and signs  of [her] mental  disorder;  and (2) marginal  adjustment,  that is,
> [she has] minimal  capacity  to adapt  to changes  in [her] environment  or to demands
> that are not already  part of [her] daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, sec. 12.04(C)  (internal  cross-references  omitted).

Listing  12.06 applies  to anxiety  and obsessive-compulsive  disorders,  including  panic

disorders.  With regard  to panic  disorders,  Listing  12.06 requires  medical  documentation  of a

plaintiff's  panic  disorder,  characterized  by one or both: "[p]anic  attacks  followed  by a persistent

concern  or worry  about additional  panic  attacks  or their consequences;"  or "[d]isproportionate  fear

or anxiety  about at least two different  situations  (for example,  using  public  transportation,  being

in a crowd,  being  in a line, being  outside  of [one's]  home,  being  in open spaces)."  *Id.* at sec. 12.06,

12.06(A)(2)  (internal  cross-references  omitted).  As relevant  here, Listing  12.06 also requires  a

showing  of one of two categories.  As one option,  a plaintiff  can demonstrate  the "paragraph  B

criteria"—"[e]xtreme  limitation  of one, or marked  limitation  of two, of the following  areas of

mental  functioning":  understanding,  remembering  or applying  information;  interacting  with

others;  concentrating,  persisting,  or maintaining  pace;  and adapting  or managing  oneself.  *Id.* at

12.06(B)  (internal  cross-references  omitted).  (*See also* Tr., at 18.)  Alternatively,  a plaintiff  can

demonstrate  that her "mental  disorder  in this listing  category  is 'serious  and persistent;'  that is,

[she has] a medically  documented  history  of the existence  of the disorder  over a period  of at least

2 years"  with

> evidence  of both: (1) medical  treatment,  mental  health  therapy,  psychosocial
> support(s),  or a highly  structured  setting(s)  that is ongoing  and that diminishes  the

symptoms and signs of [her] mental disorder; and (2) marginal adjustment, that is, [she has] minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life.

*Id.* at 12.04(C) (internal cross-references omitted).

## B.    The ALJ's Decision at Step Three

With regard to both Plaintiff's bipolar and panic disorders, the ALJ concluded that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of [L]istings 12.04 and 12.06." (Tr., at 18.)   Reviewing the paragraph B criteria, the ALJ found that Plaintiff had "moderate limitation[s]" in "understanding, remembering, or applying information"; "interacting with others"; and "concentrating, persisting, or maintaining pace." (*Id.* at 18–19.)   The ALJ also determined that Plaintiff had a "marked limitation" in "adapting or managing herself." (*Id.* at 19.)   However, because neither Plaintiff's bipolar disorder nor her panic disorder "cause[d] at least two 'marked' limitations or one 'extreme' limitation," the ALJ found that the paragraph B criteria were not satisfied for either impairment. (*Id.*)   In arriving at this conclusion, the ALJ cited Plaintiff's treatment notes from April 8 to July 10, 2017 (*id.* at 18, 2690–714), progress notes from January 21, 2015 to July 29, 2017 (*id.* at 18, 2715–921), and the November 3, 2015 treatment notes of psychological consultative examiner ("CE") W. Amory Carr, Ph.D. (*id.* at 18, 2609–12).   The ALJ also observed that Plaintiff's 2017 treatment notes "generally noted normal alertness, normal cognition, normal thought content, and normal thought processes" (*id.* at 18 (internal record citation omitted)), as well as "cooperative behavior" (*id.* at 19 (internal record citation omitted)).   The ALJ concluded that the paragraph C criteria were not satisfied with respect to either Plaintiff's bipolar or panic disorder. (*Id.*)[9]

---

[9] The Court need not discuss the paragraph C criteria, as Plaintiff argues only that the ALJ did not properly consider the treating physician's assessment of the paragraph B criteria. (Pl.'s Mem., Dkt. 10-1, at 18.)

### C.     Appropriateness of Remand

Remand is appropriate with respect to an ALJ's "rationale in support of his decision to find or not to find a listed impairment" if the district court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ." *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 483 (S.D.N.Y. 2018) (quoting *Berry*, 675 F.2d at 469) (collecting cases); *see also Rivera v. Astrue*, No. 10-CV-4324 (RJD), 2012 WL 3614323, at *11–12 (E.D.N.Y. Aug. 21, 2012) (remanding for further administrative proceedings where the ALJ failed to proffer specific rationale for the plaintiff not having met the Listing requirements, and where the ALJ's rationale was not evident from the balance of the evidence).

Here, the ALJ's rationale as to the severity of Plaintiff's bipolar and panic disorders cited to Plaintiff's treatment notes and the evaluation by CE Carr, but not the functional assessment completed by Mia Everett, M.D., Plaintiff's treating psychiatrist, on August 8, 2017. (*See* Tr., at 18–20.) In that Psychiatric Functional Assessment form, Dr. Everett, noting that Plaintiff had begun treatment on May 26, 2015, diagnosed Plaintiff with bipolar disorder and panic disorder, and indicated that Plaintiff was undergoing "[m]edication management and psychotherapy" with a "partial response." (*Id.* at 2922.) With respect to the paragraph B criteria, Dr. Everett indicated that Plaintiff had "marked or serious limitations" in several work-related activities within three of the four categories[10] of mental functioning: "interacting with others;"[11] "concentration,

---

[10] Dr. Everett indicated that Plaintiff had only mild or moderate limitations in work-related activities within the broader category of "understanding, remembering, or applying information." (*See id.* at 2923.)

[11] Dr. Everett indicated that Plaintiff had "marked or serious" limitations in four work-related activities in this area. (*See id.* at 2924.)

persistence, or maintaining pace;"[12] and "adapting or managing oneself."[13] (*Id.* at 2924–25.) However, despite Dr. Everett's assessment, the ALJ instead referred to the assessment of CE Carr, who found that Plaintiff had only "moderate" limitations in maintaining attention and concentration, and "moderate to marked" limitations in her ability to relate with others. (*Id.* at 2611.) The ALJ then concluded from Plaintiff's treatment notes by Dr. Everett and other mental health professionals that Plaintiff otherwise exhibited normal symptoms. (*See, e.g., id.* at 19 ("[Plaintiff's] treatment notes generally noted cooperative behavior."); *id.* ("[Plaintiff's] treatment notes generally noted normal alertness, normal cognition, normal thought content, and normal thought processes.").)

The Court cannot find that the ALJ's step-three rationale is supported by substantial evidence. Plaintiff's treatment records do not, in fact, indicate normal, or even improving, symptoms. On February 27, 2015, Plaintiff's treatment notes report that she "has trouble managing mood swings" and experiences "anxiety and panic attacks." (*Id.* at 2862.) On May 26, 2015, Plaintiff was noted as "present[ing] with mood disturbance, sleep disturbance, and recurrent panic attacks in the setting of treatment noncompliance for several months." (*Id.* at 2793.) A progress review dated September 5, 2015 notes that "[Plaintiff] is not able to manage mood swings, stress, and anxiety. She too reports not being able to problem solve." (*Id.* at 2752.)[14] Plaintiff "appeared

---

[12] Dr. Everett indicated that Plaintiff had "marked or serious" limitations in three work-related activities in this area. (*See id.* at 2924.)

[13] Dr. Everett indicated that Plaintiff had "marked or serious" limitations in four work-related activities in this area. (*See id.* at 2925.)

[14] While Plaintiff was first scheduled to begin treatment on January 21, 2015, she initially had a number of attendance issues in coming in for her appointments. (*See, e.g., id.* at 2864 (noting "recent attendance issues"); *id.* at 2865 (noting that "case will close" if Plaintiff did not make next scheduled appointment).) Plaintiff's case was closed on April 28, 2015 due to these attendance issues (*id.* at 2869), and she came in for an intake appointment on April 29, 2015 (*id.* at 2870).

calm and alert" during intake on April 8, 2017 (*id.* at 2808), but "reported that she [wa]s not able to maintain her job as a result of getting into fights with customers and her co[-]workers," and that she was "not able to maintain relationships with friends" (*id.* at 2822). Plaintiff's April 8, 2017 notes document that "[Plaintiff] needs to work on complying with treatment and managing her anger outbursts to minimize physical altercation (fightings) that negatively impacts on her ability to maintain relationships with others." (*Id.* at 2823.) On April 29, 2017, Plaintiff presented with "frequent panic attacks and mood symptoms consistent with a mixed episode." (*Id.* at 2826.) She was noted as having "recent crying spells and mood swings. Her mood fluctuates from happy to sad and irritable. . . . She experiences racing thoughts and pressured speech. . . . She also experiences depressive episodes with low motivation, anhedonia, and low energy." (*Id.* at 2831.) Plaintiff also "reported poor impulse control and anger outburst issues." (*Id.* at 2837.)

In a psychiatric evaluation on May 30, 2017, Dr. Everett noted that Plaintiff had previously been taking Lexapro 10mg for anxiety and Seroquel 200mg for mood symptoms, that she reported worsening of her mood without medications, and that she wanted to resume the medications. (*See id.* at 2844.) Dr. Everett also noted that Plaintiff "report[ed] recurrent panic attacks" and "was seen in the ER twice for anxiety symptoms within the past month." (*Id.*) Plaintiff's affect was observed as "anxious" at this evaluation. (*Id.*) Dr. Everett noted a follow-up for Plaintiff to resume Lexapro and Seroquel. (*Id.* at 2847.) On June 13, 2017, another evaluation noted that "[Plaintiff] is not able to manage mood swings, stress, and anxiety.." (*Id.* at 2770.) On July 29, 2017, a discharge summary shows that Plaintiff withdrew without notice from services. (*Id.* at 2850.)

---

Plaintiff was again discharged on November 19, 2015 after "[s]ignificant progress was not made as [Plaintiff] did not maintain consistent attendance," and "[Plaintiff] withdrew without notice." (*Id.* at 2798–99.)

In light of these treatment notes and Dr. Everett's functional assessment, "the record evidence suggests that Plaintiff's symptoms *could* meet the Listing requirements," and the Court is thus "unable to assess whether the ALJ's decision is supported by substantial evidence." *Perozzi*, 287 F. Supp. 3d at 483 (emphasis added) (citation omitted); *accord Duran v. Colvin*, No. 14-CV-8677 (HBP), 2016 WL 5369481, at *17 (S.D.N.Y. Sept. 26, 2016) (remanding where the ALJ at step three "failed to fully address the medical evidence that potentially meets the listing requirements"); *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507–08 (S.D.N.Y. 2014) (finding that remand was appropriate where there was insufficient uncontradicted evidence in the record to support the ALJ's rationale at step three); *Norman v. Astrue*, 912 F. Supp. 2d 33, 41 (S.D.N.Y. 2012) (remanding where "the ALJ's failure to explain his reasoning and the conflicting medical evidence in the record," did not allow the court to "conclude by looking at 'sufficient uncontradicted evidence' that the ALJ's decision was supported by substantial evidence" (citation omitted)).

Accordingly, because the ALJ's step-three rationale discounts portions of Plaintiff's treatment notes and the assessment of Dr. Everett, the Court is unable to fathom his rationale and finds that remand is warranted on this basis. The Court notes that the ALJ was not required to set out why Plaintiff's impairments did not meet the requirements of Listings 12.04 and 12.06 in his step-three rationale so long as "other portions of [his] decision and the evidence before him indicate[d] that his conclusion was supported by substantial evidence." *McIntosh*, 2018 WL 4376417, at *22 (quoting *Berry*, 675 F.2d at 468). However, for the reasons discussed next, the Court finds that other portions of his decision do not support either his step-three rationale or his conclusion that Plaintiff's mental impairments did not meet the Listing requirements.

## II.     Treating Physician Rule

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[15] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted).   Under the treating physician rule, a treating source's opinion is given "controlling weight" so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record.   20 C.F.R. § 416.927(c)(2).   If the opinion of the treating physician is not given controlling weight, the ALJ must apply a number of factors in order to determine the opinion's proper weight.   *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These factors include: (i) the frequency of examination as well as the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating source's opinion; (iii) the extent to which the opinion is consistent with the record as a whole; (iv) whether the treating source is a specialist; and (v) other relevant factors.   *See* 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)– (6); *see also Selian*, 708 F.3d at 419 (noting that an ALJ choosing to "override the opinion of the treating physician . . . must explicitly consider" these factors).   After discussing these factors, an ALJ "must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."   *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal quotation and citation omitted).

---

[15] Although "[t]he current version of the [Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c).   Because Plaintiff's claim was filed on October 27, 2015, the treating physician rule applies.

Here, with respect to Plaintiff's bipolar and panic disorders, the ALJ's RFC determination relied almost entirely on Plaintiff's treatment notes and the opinions of CE Carr and Dr. Everett. The Court finds that remand is warranted because the ALJ gave undue weight to CE Carr's opinion over Dr. Everett's opinion without providing a sufficient rationale, in violation of the treating physician rule.

### A.      CE Carr's Opinion

As a general matter, "a consulting physician's opinions or report should be given limited weight." *Adesina v. Astrue*, No. 12-CV-3184 (WFK), 2014 WL 5380938, at *9 (E.D.N.Y. Oct. 22, 2014) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). "This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Cruz*, 912 F.2d at 13 (internal quotation and citation omitted); *see also Selian*, 708 F.3d at 419 (noting the general rule that "ALJs should not rely heavily on the findings of consultative physicians after a single examination" (citation omitted)). However, an ALJ "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015) (collecting cases). An ALJ giving greater weight to a consultative examiner's opinion should document his rationale for finding that the relevant standards are met. *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577–78 (S.D.N.Y. 2015).

CE Carr saw Plaintiff for a single examination on November 3, 2015, at which Plaintiff reported having, *inter alia*, "some symptoms of depression," "persistently [] angry outbursts" with "heart palpitations, sweating, trembling, and breathing difficulties," "explosive irritability,

sometimes in the context of decreased need for sleep, flight of ideas, and psychomotor agitation."
(Tr., at 2610.)  Upon examination, CE Carr noted that Plaintiff had a "depressed" affect,
"dysthymic" mood,[16] "impaired" attention and concentration, "impaired" recent and remote
memory skills, and "below average" intellectual functioning.  (*Id.* at 2611.)  CE Carr described
Plaintiff's limitations as follows:

> She is able to follow and understand simple directions and instructions with
> moderate limitation.  She is able to perform simple tasks independently with
> moderate limitation.  Maintain attention and concentration with moderate
> limitation.  She is able to maintain a regular schedule with moderate limitation.  She
> can learn new tasks with moderate limitation.  She can perform[] complex tasks
> independently with moderate limitation.  She can make appropriate decisions with
> moderate limitation.  She can relate adequately [to] others with moderate to marked
> limitations, and appropriately deal with stress with moderate to marked limitation.

(*Id.* at 2611–12.)  CE Carr concluded that "[t]he results of the examination are consistent with
psychiatric problems, and may significantly interfere with the claimant's ability to function on a
daily basis."  (*Id.* at 2612.)  The ALJ gave "great weight" to CE Carr's opinions as to Plaintiff's
limitations because

> (1) they are supported by the examination findings . . . , (2) they are supported by
> [Plaintiff's] treatment notes noting her symptoms are generally well-controlled
> with medication, (3) they are supported by [Plaintiff's] treatments notes noting
> generally normal mental status examination findings, and (4) [CE] Carr is familiar
> with the [SSA]'s rules and regulations regarding disability.

(*Id.* at 22–23.)

As an initial matter, CE Carr's examination notes, in which he opined that Plaintiff had a
"depressed" affect, "dysthymic" mood, "impaired" attention and memory, and moderate
limitations in many behavioral areas, do not seem to confirm the ALJ's reading of Plaintiff's
treatment notes—*i.e.*, that Plaintiff had "generally normal mental status examination findings"

---

[16] Dysthymia is a "chronic mood disorder manifested as depression for most of the day,
more days than not."  *Dysthymia*, Stedman's Medical Dictionary 274660 (Nov. 2014).

15

(compare id. at 2612 (CE Carr's notes), with id. at 23 (ALJ finding))—which, in any event, as discussed supra, do not uniformly show "normal" findings. Furthermore, even CE Carr concluded at his examination that Plaintiff's limitations "may significantly interfere with [her] ability to function on a daily basis." (Id. at 2612.) The Court is thus unable to understand how the ALJ could find that CE Carr's opinion was consistent with Plaintiff's treatment notes (based on the ALJ's unsupported interpretation of those notes), or that CE Carr's opinion as to Plaintiff's limitations was that she had "generally normal mental status examination findings."[17]   In short, based on the record before the Court, the ALJ's conclusion that CE Carr's findings are supported by the treatment notes and that, therefore, CE Carr's opinion deserves "great weight," is not supported by substantial evidence.

The Court next addresses the improper weight accorded to CE Carr's opinion relative to the weight accorded that of Dr. Everett, Plaintiff's treating psychiatrist.

### B.    Treating Psychiatrist's Opinion

As discussed supra, Plaintiff's records include therapy and psychiatry treatment notes (see generally id. at 2690–921), as well as a psychiatric functional assessment (id. at 2922–30), by Plaintiff's treating psychiatrist, Dr. Everett.  In his RFC assessment, the ALJ noted that the records indicated "[Plaintiff's] symptoms to be generally well-controlled with medication and indicate mostly normal mental status examination findings." (Id. at 21.)  The ALJ then discussed Dr. Everett's functional assessment in greater detail and determined that the majority of the assessment, including Dr. Everett's assessment of Plaintiff's various "marked limitations,"

---

[17] Furthermore, to the extent the ALJ adopted CE Carr's opinion, he did so selectively, seemingly choosing to ignore CE Carr's conclusion that Plaintiff's mental health status "may significantly interfere with [her] ability to function on a daily basis" (id. at 2612), which amounts to improper "cherry picking" of the record evidence, see Quinto v. Berryhill, No. 17-CV-00024 (JCH), 2017 WL 6017931, at *14 (D. Conn. Dec. 1, 2017).

warranted "great weight because (1) it is supported by [CE] Carr's findings, (2) it is supported by [Plaintiff's] treatment notes noting [Plaintiff's] symptoms are generally well-controlled with medication, and (3) it is supported by [Plaintiff's] treatment notes noting generally normal mental status examination findings." (*Id.* at 22.) The ALJ gave "little weight" only to the portion of Dr. Everett's assessment opining that Plaintiff would "miss more than 4 days of work per month due to her symptoms" because "it is not supported by treatment notes which generally indicate that [Plaintiff's] mood and symptoms were stable when she took her medication." (*Id.*)

Here, the Court cannot reconcile the "great weight" that the ALJ purportedly gave to the majority of Dr. Everett's assessment of Plaintiff's limitations with the "great weight" that the ALJ then accorded to CE Carr's rather different assessment of Plaintiff's limitations, and on which the ALJ's RFC determination largely rests. Dr. Everett found that Plaintiff had "marked limitations or serious limitations" in several work-related activities within the mental functioning categories of: "interacting with others," "concentration, persistence, or maintaining pace," and "adapting or managing oneself." (*Id.* at 2924–25.) In contrast, CE Carr opined that Plaintiff had only moderate limitations in each area, except in "relat[ing] adequately to others" and "appropriately deal[ing] with stress," for which he still assessed "moderate to marked limitations." (*Id.* at 2612.) Without discussing the treating physician factors or otherwise justifying his rationale, the ALJ then found CE Carr's opinion to be consistent with the medical evidence that the ALJ interpreted, with little basis, as showing generally normal findings. (*Id.* at 24.)[18]

In not affording Dr. Everett's opinion controlling weight, the ALJ should have considered the requisite factors under 20 C.F.R. § 404.1527(c)(1)–(6). His failure to do so was error.

---

[18] The Court notes, too, that CE Carr's November 3, 2015 examination predated both Dr. Everett's August 8, 2017 assessment as well as several months' worth of Plaintiff's treatment notes.

Moreover, to the extent the ALJ afforded "great weight" to the majority of Dr. Everett's assessment because her findings were "supported by Dr. Carr's findings" (*id.* at 22), this was also error. A treating physician's opinion should not be evaluated against the yardstick of a CE opinion if the ALJ has not provided the requisite justification. *See Lugo Rodriguez v. Berryhill*, No. 17-CV-93 (VLB), 2018 WL 1135330, at *7 (D. Conn. Mar. 2, 2018) ("An ALJ may not make an arbitrary decision to credit a consultative examiner's opinion over that of a treating physician. If [the treating physician's] medical opinion should not be given 'controlling weight,' [the ALJ] must then consider the requisite factors under 20 C.F.R. § 404.1527(c)(1)–(6)." (internal citation omitted)); *Wilson v. Colvin*, No. 15-CV-6316 (JWF), 2016 WL 5462838, at *12 (W.D.N.Y. Sept. 28, 2016) (remanding where "the ALJ's decision to credit the opinion of the consultative examiner over plaintiff's treating physicians [was], as best the [c]ourt [could] tell from the record, an arbitrary one"). Even allowing that CE Carr's opinion was to some extent consistent with the opinion of Dr. Everett, remand would still be warranted because of the outsized weight afforded to CE Carr's opinion based on its purported consistency with the treatment notes. *See Grosso v. Colvin*, No. 15-CV-8709 (AT) (GWG), 2016 WL 4916968, at *9 (S.D.N.Y. Sept. 14, 2016) (holding that, even where "the ALJ made extensive efforts to evaluate the conflicts between [the opinion of plaintiff's] treating physician . . . and the opinions of consultative examiners," remand was still appropriate "because of certain errors reflected in the ALJ's decision regarding the weight to be accorded to the consultative examiners").

Accordingly, the Court concludes that remand is warranted because the ALJ credited CE Carr's opinion over that of Dr. Everett, without adequately explaining why, and while claiming to accord great weight to Dr. Everett's opinion yet also seeming to disregard it in making his RFC determination.

### III.    Plaintiff's Credibility

In making his disability determination, "[t]he ALJ will consider all of the available medical evidence, including a [plaintiff's] statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285 (MKB), 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 749 F. App'x 367, 370–71 (2d Cir. 2012) (summary order)). "To the extent that a [plaintiff's] allegations of [a symptom] 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id.* (quoting *Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) (summary order)). Credibility determinations by the ALJ "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Atwater v. Astrue*, No. 10-CV-420 (WMS), 2012 WL 28265, at *6 (W.D.N.Y. Jan. 5, 2012) (internal quotation and citation omitted), *aff'd*, 512 F. App'x 67 (2d Cir. 2013) (summary order).

In her September 29, 2017 hearing testimony before the ALJ, Plaintiff described her persistent symptoms of bipolar and panic disorder. (*See* Tr., at 45–46 (summarizing that Plaintiff testified to having "trouble remembering things, [] irritability with people, panic attacks in various situations, sleep trouble," and mood swings).) Plaintiff testified that she was taking Lexapro and Seroquel, with the former "just to slow down the panic attacks" (*id.* at 46, 52), and that a care coordinator came to the house weekly in order to make sure that she took her medications (*id.* at 50–51).[19] In his RFC determination, the ALJ summarized certain portions of Plaintiff's hearing

---

[19] Purportedly relying on Plaintiff's treatment notes, the ALJ concluded that Plaintiff's mental health limitations were "generally well-controlled with medication and indicate mostly normal mental status examination findings." (Tr., at 21.) The Court finds that this conclusion is

testimony and concluded simply that "[Plaintiff's] testimony cannot be considered fully consistent with the [record] evidence including the findings from [CE] Carr . . . as well as [Plaintiff's] treatment notes summarized above." (*Id.* at 24.)

In discounting Plaintiff's hearing testimony, the ALJ did not explain how Plaintiff's self-reported symptoms of bipolar and panic disorders were somehow inconsistent with her treatment notes, and failed to refer to or discuss Dr. Everett's psychiatric assessment. The ALJ noted only that he considered Plaintiff's statements and evaluated them "pursuant to the factors set forth by the Commissioner in Social Security Ruling 16-3p."[20] (*Id.*) This is plainly inadequate. "If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Fernandez v. Astrue*, No. 11-CV-3896 (DLI), 2013 WL 1291284, at *18 (E.D.N.Y. Mar. 28, 2013) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 296, 435 (S.D.N.Y. 2010)). In this instance, the

---

not supported by substantial evidence. As previously noted, Plaintiff's treatment record is replete with examples of her non-compliance with treatment, including running out of her medication. (*See id.* at 2791 (noting on May 26, 2015 that Plaintiff had been off her medication for two months); *id.* at 2707 (noting on April 29, 2017 that Plaintiff had run out of medication a week earlier).) Insofar as Plaintiff's hearing testimony suggests that she consistently took her medication, it is contradicted by Plaintiff's treatment records. Furthermore, those records undermine the ALJ's assessment that Plaintiff's symptoms were generally well controlled with medication because the records do not make any definitive findings as to the effectiveness of Plaintiff's medication in treating her symptoms. (*Compare id.* at 23 (ALJ finding), *with id.* at 2770 (noting on June 13, 2017 that "[Plaintiff] continues to be in [the] beginning stages of treatment").)

[20] In relevant part, this ruling states that an ALJ evaluating a plaintiff's testimony should "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" Soc. Sec. Ruling 16-3P, 2016 WL 1119029, at *10 (Mar. 16, 2016).

ALJ did not provide an explanation with any such specificity. The Court accordingly finds that remand is also warranted on this basis.

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further administrative proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 28, 2020
          Brooklyn, New York